**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| ERIC DRAKE, | |
| Plaintiff, | |
| v. | Civil Action No. 1:20-cv-03935-SDG |
| U.S. FREEDOM CAPITAL, LLC, *et al.*, | |
| Defendants. | |

**<u>OPINION AND ORDER</u>**

This matter is before the Court on the following motions:

- Plaintiff Eric Drake's motion for a preliminary injunction [ECF 1];[1]

- Defendants Dale Tillery and Emily Tobolowsky's motion to dismiss [ECF 9];

- Defendants Stonegate Management, GP, LLC and Stonegate Senior Living, LLC's (hereafter, Stonegate) motions to dismiss [ECF 12; ECF 13];

- Drake's motion for substitution of service [ECF 18];

- Drake's objection to the involvement of the Georgia Attorney General [ECF 24];

---

[1]   Although this motion and the case caption identify Plaintiff as "Eric Erpel," his name is actually Eric Drake. *See infra* pp. 27–28.

- Drake's motion for the Court to seize his property [ECF 25];

- Drake's motion for the Clerk's entry of default and a default judgment [ECF 26];

- Defendants U.S. Freedom Capital, LLC and Adora 9 Operations, LLC's motion to set aside default and/or leave to file untimely responsive pleadings [ECF 33];

- U.S. Freedom Capital and Adora 9 Operations' motion to dismiss [ECF 35];

- Drake's motion for an evidentiary hearing [ECF 43];

- Drake's motion for leave to file a Second Amended Complaint [ECF 54];

- Defendant Allen Landerman PC's (hereafter, Landerman) motion to dismiss [ECF 50];

- Landerman's motion for sanctions [ECF 53]; and

- Drake's motion to strike [ECF 61].

After careful review of the entire record, the Court enters the following Order.

## I.     BACKGROUND

Eric Drake initiated this action on September 23, 2020, by filing an "Emergency Application for *Ex Parte* Temporary Restraining Order, Temporary

Injunction, Permanent Injunction, and request for Declaratory Judgment."[2] The Court heard argument from Drake that same day and denied the application.[3] Six days later, Drake filed an Amended Complaint.[4] Following a flurry of motions practice, Drake requested leave to file a Second Amended Complaint on January 22, 2021.[5]

The gravamen of Drake's grievance centers around his allegation that, since December 2019, Adora Midtown Park—an assisted living facility located in Dallas, Texas—has unlawfully retained a painting Drake created and subsequently loaned to his friend's mother, Maxine Cash, while she resided there. According to Drake, Stonegate—which purportedly manages Adora Midtown Park—has refused to permit Drake entry onto the premises to reacquire his painting.

But that does not encompass the full extent of Drake's claims. He further alleges a cavalcade of constitutional violations against an assortment of corporate entities, private individuals, state and federal judges, and even the entirety of Dallas County, Texas. A focal point concerns a collection of orders entered by state

---

[2]    ECF 1.

[3]    ECF 3.

[4]    ECF 6.

[5]    ECF 54.

and federal judges located in North Texas that have: (1) prohibited Drake from obtaining *in forma pauperis* status as a *pro se* litigant in various federal district courts; (2) entered a temporary restraining order (TRO)—sought by a group who are named Defendants in this case—against Drake barring him from attempting to contact those parties or trespass on their property;[6] and (3) sending purportedly related claims—to which Drake is not a party—to private arbitration.[7] According to Drake, Defendants have engaged in these and other actions as to intentionally discriminate against him based on his race. In addition, Drake asserts a stand-alone claim—albeit not against any particular Defendant—declaring that the Northern District of Georgia has violated his right to a "random assignment" of his case through the Undersigned's involvement.[8] As to remedies, Drake seeks

---

[6]    *See* ECF 6-1, at 1–4 (TRO entered by Judge Tobolowsky, the presiding judge of the Texas 298th Judicial District Court). In granting the TRO, Judge Tobolowsky made the following finding: "[Drake] has already appeared at the residences of a party to this case [ ] as well as the principal of a party, as well as counsel for the Plaintiffs, and that such appearances and trespasses were intended to harass and intimidate and did in fact harass and intimidate the parties [and] their spouses and children." [ECF 6-1, at 3.]

[7]    *See Sherrie L. Cash, et al. v. Adora 9 Operations, LLC, et al.*; Case No. DC-20-07375 (Tex. 134th Dist. Ct. Cnty.).

[8]    Drake's argument proceeds as follows: Because he has filed at least five civil cases in this District—all of which were assigned to U.S. District Judge Richard W. Story—and the Undersigned was confirmed after Judge Story elected to take senior status, the assignment of this case was not the product of a random allotment, but a concerted scheme to continue treating him unfairly.

injunctive and declaratory relief, as well as a host of compensatory and punitive damages, including $1.7 billion from Dallas County, Texas.

## II.   DISCUSSION

### A.   Standard of Review Applicable to *Pro Se* Parties

The Court recognizes that Drake is appearing *pro se*. Thus, the Court must "liberally construe[ ]" his filings, holding them "to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted) (internal quotation marks omitted). *See also Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998). But even a *pro se* plaintiff must comply with the threshold requirements of the Federal Rules of Civil Procedure. *Moon v. Newsome*, 863 F.2d 835, 837 (11th Cir. 1998) (holding that "once a *pro se* [ ] litigant is in court, he is subject to the relevant law and rules of court, including the Federal Rules of Civil Procedure"). The Court's leniency does not afford it license to "act as de facto counsel or rewrite an otherwise deficient pleading to sustain an action." *Bilal v. Geo Care, LLC*, 981 F.3d 903, 911 (11th Cir. 2020).

---

Notwithstanding its multitude of procedural defects, Drake's position is factually incorrect. On April 4, 2019, Judge Thomas W. Thrash dismissed a separate case brought by Drake. *E.V. Drake v. Payne Mitchell Law Group LLC*, Case No. 1:19-cv-00502-TWT. Drake also has another case in this District (filed *after* this action) currently pending before U.S. District Judge J.P. Boulee. *See* Case No. 1:20-cv-04658-JPB.

## B.     Analysis

The voluminous filings amassed to date in this litigation raise a number of topics. The Court must first, however, resolve certain miscellaneous matters.[9] Because it is a threshold issue effecting each Defendant, the Court must then address personal jurisdiction. *See Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 940 (11th Cir. 1997) ("As a general rule, courts should address issues relating to personal jurisdiction before reaching the merits of a plaintiff's claims."). Since the Court lacks jurisdiction, it must go no further.

### 1.     The Purportedly Defaulting Defendants

On November 16, 2020, Drake filed a "Request for Clerk's Entry of Default and Default Judgment" against U.S. Freedom Capital and Adora 9 Operations. In support, Drake submits evidence that both Defendants were simultaneously served on October 7 through personal service on David Eric Gunderson—U.S. Freedom Capital's Chief Investment Officer—at his personal residence.[10]

---

[9]     At the outset, the Court denied Drake's request for an emergency TRO [ECF 1] at the completion of the September 23, 2020 hearing [ECF 3]. Drake has not filed a second motion seeking such relief. Nonetheless, various Defendants have filed responses in opposition to the original filing [ECF 20; ECF 21]. For the sake of clarity, and to the extent it seeks a permanent injunction, the pending motion docketed at ECF 1 is **DENIED**.

[10]     ECF 26, at 8–13.

On November 23, both Defendants filed a motion to set aside default or, in the alternative, leave to file untimely responsive pleadings.[11] Drake did not file a response in opposition to that motion.

Federal Rule of Civil Procedure 55 establishes a two-step process for a party to obtain a default judgment. First, the movant must obtain a Clerk's entry of default by providing evidence "by affidavit or otherwise" that the opposing party "has failed to plead or otherwise defend." Fed. R. Civ. P. 55(a). Second, after securing the Clerk's entry of default, the movant must apply for the Court to enter a default judgment. Fed. R. Civ. P. 55(b). A default judgment is a "drastic remedy which should be used only in extreme situations." *Mitchell v. Brown & Williamson Tobacco Corp.*, 294 F.3d 1309, 1316–17 (11th Cir. 2002). Such requests are viewed "with disfavor because of the strong policy of determining cases on their merits." *Fla. Physician's Ins. Co. v. Ehlers*, 8 F.3d 780, 783 (11th Cir. 1993).

To date, neither the Clerk nor the Court has entered default against U.S. Freedom Capital or Adora 9 Operations. Nonetheless, their request to file an untimely dipositive motion is still governed by the "good cause" standard of Rule 55(c). *Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1337 (11th Cir. 2014).

---

[11]   ECF 33.

Although "[g]ood cause is a mutable standard, varying from situation to situation," the Court should consider factors such as "whether the default was culpable or willful, whether setting it aside would prejudice the adversary, and whether the defaulting party presents a meritorious defense." *Compania Interamericana Exp.-Imp., S.A. v. Compania Dominicana de Aviacion*, 88 F.3d 948, 951 (11th Cir. 1996). Here, the Court is satisfied that U.S. Freedom Capital and Adora 9 Operations have demonstrated sufficient good cause. Specifically, based on their representations, the failure to respond was not intentional or willful. Moreover, Drake will not be prejudiced by the untimely filing and, as discussed below, Defendants have asserted meritorious defenses. At bottom, the Court elects to exercise its broad discretion in deciding how best to manage the cases before it by permitting the out-of-time filing. *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1366 (11th Cir. 1997). Drake's motion [ECF 26] is **DENIED** and U.S. Freedom Capital and Adora 9 Operation's motion [ECF 33] is **GRANTED**.

## 2.    Drake's Objection to the Involvement of the Georgia Attorney General

Drake has sued two Texas State District Court judges in their individual and official capacities: Dale Tillery (presiding judge of the 134th Judicial District Court) and Emily Tobolowsky (presiding judge of the 298th Judicial District Court). On October 22, 2020, Tobolowsky and Tillery filed a joint motion to dismiss Drake's

claims. Those Defendants are represented by the Texas Attorney General and Georgia Attorney General. As conspicuously noted in that motion, the Georgia Attorney General is acting only as local counsel.[12] On November 16, Drake filed an objection to the Georgia Attorney General's involvement in this case and corresponding motion to strike. According to Drake, the Georgia Attorney General has neither standing nor the authority to represent either the Texas Attorney General or the two Texas state judges. On November 30, Tillery and Tobolowsky filed a response in opposition to Drake's motion.

The disqualification of legal counsel constitutes "a harsh sanction" that "should be resorted to sparingly." *Norton v. Tallahassee Mem'l Hosp.*, 689 F.2d 938, 941 n.4 (11th Cir. 1982). A litigant "is presumptively entitled to the counsel of [its] choice," which may only be overridden "if compelling reasons exist." *In re BellSouth Corp.*, 334 F.3d 941, 961 (11th Cir. 2003). "The party moving to disqualify counsel bears the burden of proving the grounds for disqualification." *Id.*

Drake's motion is meritless. Because Tillery and Tobolowsky are Texas state judges, the Texas Attorney General is statutorily required to defend them in this action. *See* Tex. Civ. Prac. & Rem. Code § 104.004(a). Since the Texas Attorney

---

12   ECF 9-1, at 20.

General is a nonresident attorney, the Local Rules of this District require him to (1) "apply in writing for permission to appear *pro hac vice*" and (2) "designate a local member of the bar" as local counsel to "sign all pleadings and other papers filed in the case by the attorney appearing *pro hac vice*." LR 83.1(B)(1)–(2), NDGa. On October 19, 2020, Caroline Merideth—an attorney with the Texas Attorney General—filed an application for admission *pro hac vice* and designated Jason Naunas—an attorney with the Georgia Attorney General's Office—as local counsel.[13] Despite Drake's ominous characterizations, there is no indication that Naunas or the Georgia Attorney General have in any way acted impermissibly. They are simply acting as local counsel to comply with the procedural rules of this District. Drake's objection and motion to strike are **DENIED**.

### 3.   Drake's Motion for Leave to Amend and the Pending Motions to Dismiss

There are currently five pending motions to dismiss filed by: (1) Tillery and Tobolowsky;[14] (2) Stonegate;[15] (3) U.S. Freedom Capital and Adora 9 Operations;[16]

---

[13]   ECF 8.

[14]   ECF 9.

[15]   Stonegate has filed two separate motions to dismiss, each raising independent grounds [ECF 12 (personal jurisdiction); ECF 13 (venue)].

[16]   ECF 35.

and Landerman.[17] Drake has filed a response in opposition to each. He has also requested leave to file a Second Amended Complaint.[18] U.S. Freedom Capital, Adora 9 Operations, Tillery, Tobolowsky, and Stonegate have filed responses in opposition. The Court must first address the motion for leave to amend because, if granted, it would moot the pending dispositive motions. *See Dresdner Bank AG, Dresdner Bank AG in Hamburg v. M/V OLYMPIA VOYAGER*, 463 F.3d 1210, 1215 (11th Cir. 2006) ("An amended pleading supersedes the former pleading; the original pleading is abandoned by the amendment, and is no longer a part of the pleader's averments against his adversary."); *Fritz v. Standard Sec. Life Ins. Co. of New York*, 676 F.2d 1356, 1358 (11th Cir. 1982) ("Under the Federal Rules, an amended complaint supersedes the original complaint."). But, as discussed below, the resolutions of these outstanding motions are substantially intertwined.

After the time for amendment as a matter of course has expired, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Although the Court "should freely give leave when justice so requires"—*id.*—it may deny leave:

> [W]here there is substantial ground for doing so, such as undue delay, bad faith or dilatory motive on the part of

---

17   ECF 50.

18   ECF 54.

> the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, and futility of amendment.

*Reese v. Herbert*, 527 F.3d 1253, 1263 (11th Cir. 2008) (brackets and punctuation omitted). *See also Foman v. Davis*, 371 U.S. 178, 182 (1962); *Abramson v. Gonzalez*, 949 F.2d 1567, 1581 (11th Cir. 1992). Notwithstanding, the ultimate decision of whether to grant leave to amend remains committed to the Court's discretion. *S. Grouts & Mortars, Inc. v. 3M Co.*, 575 F.3d 1235, 1240 (11th Cir. 2009); *Shipner v. E. Air Lines, Inc.*, 868 F.2d 401, 406 (11th Cir. 1989).

Drake seeks leave to file a Second Amended Complaint that largely mirrors the allegations contained in his prior pleadings. All Defendants opposing Drake's request contend leave should be denied because amendment would be futile. "An amendment is considered futile when the claim, as amended, would still be subject to dismissal." *Boyd v. Warden, Holman Corr. Facility*, 856 F.3d 853, 864 (11th Cir. 2017) (citing *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1320 (11th Cir. 1999)). *See also Alberto v. Sec'y, Fla. Dep't of Corr.*, 770 F. App'x 467, 469 (11th Cir. 2019) ("A court may [ ] dismiss a *pro se* complaint with prejudice where any amendment would be futile—that is, where even a more carefully drafted complaint could not state a claim.") (quoting *Woldeab v. Dekalb Cnty. Bd. of Educ.*, 885 F.3d 1289, 1291 (11th Cir. 2018)). "When deciding whether the complaint as amended is still

subject to dismissal, the usual motion to dismiss standard applies." *Oltmanns v. Int'l Longshoremen's Ass'n*, 837 F. App'x 689, 694 (11th Cir. 2020) (citing *Chang v. JPMorgan Chase Bank, N.A.*, 845 F.3d 1087, 1094 (11th Cir. 2017)).

Each Defendant to file a dispositive motion has raised the same defense: that Drake's claims must be dismissed for lack of personal jurisdiction. The Court agrees. Thus, Drake's motion for leave to amend must be **DENIED** and Defendants' dispositive motions **GRANTED**, regardless of whether other asserted arguments may also have merit. *See Madara v. Hall*, 916 F.2d 1510, 1514 n.1 (11th Cir. 1990) ("As a general rule, when the court is confronted by a motion raising a combination of Rule 12(b) defenses, it will pass on the jurisdictional issues before considering whether a claim was stated by the complaint.").

### i. The Court Lacks Personal Jurisdiction Over These Defendants.

It is beyond cavil that "[a] federal district court is under a mandatory duty to dismiss a suit over which it has no jurisdiction." *Stanley v. Cent. Intel. Agency*, 639 F.2d 1146, 1157 (5th Cir. 1981).[19] *See also* Fed. R. Civ. P. 12(b)(2). A plaintiff seeking to establish "personal jurisdiction over a nonresident defendant bears the

---

[19] The Eleventh Circuit recognizes all Fifth Circuit decisions rendered by September 30, 1981 as binding. *See Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1207 (11th Cir. 1981).

initial burden of alleging in the complaint sufficient facts to make out a *prima facie* case of jurisdiction." *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1257 (11th Cir. 2010) (quoting *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009)). "A *prima facie* case is established if the plaintiff presents enough evidence to withstand a motion for directed verdict." *Madara*, 916 F.2d at 1514. In assessing a *prima facie* case, the Court "must accept the facts alleged in the complaint as true, to the extent they are uncontroverted by the defendant's affidavits." *Id*. If the defendant submits contradictory affidavits, "the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction unless those affidavits contain only conclusory assertions that the defendant is not subject to jurisdiction." *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th Cir. 2002). "Where the plaintiff's complaint and supporting evidence conflict with the defendant's affidavits, the court must construe all reasonable inferences in favor of the plaintiff." *Diamond Crystal*, 593 F.3d at 1257 (quoting *Meier*, 288 F.3d at 1269).

The Supreme Court recognizes two types of personal jurisdiction: general and specific. *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021); *Bristol-Myers Squibb Co. v. Super. Ct. of Cal., San Francisco Cnty.*, 137 S. Ct. 1773, 1779–80 (2017). "A court may assert general jurisdiction over foreign (sister-

state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (quoting *Int'l Shoe Co. v. Wash. Office of Unemployment Comp. & Placement*, 326 U.S. 310, 317 (1945)). "[T]he paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is . . . the place of incorporation and principal place of business." *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). In contrast, specific jurisdiction hinges "on an affiliation between the forum and the underlying controversy." *Goodyear*, 64 U.S. at 919 (citation omitted). *See also Ford*, 141 S. Ct. at 1024 ("Specific jurisdiction is different: It covers defendants less intimately connected with a State, but only as to a narrower class of claims*."); Bristol-Myers Squibb*, 137 S. Ct. at 1780 ("[T]he *suit* must arise out of or relate to the defendant's contacts with the forum.") (emphasis in original) (brackets and punctuation omitted).

The Court here need not consider whether general jurisdiction exists. Drake does not allege or otherwise argue that any corporate Defendant can properly be considered "at home" in Georgia. That leaves specific jurisdiction. The inquiry is two-fold: "the exercise of jurisdiction must (1) be appropriate under the state long-

arm statute and (2) not violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution." *Diamond Crystal*, 593 F.3d at 1257–58. This bifurcation is necessary because the Georgia long-arm statute "imposes independent obligations that a plaintiff must establish for the exercise of personal jurisdiction that are distinct from the demands of procedural due process." *Id.* at 1259 (interpreting *Innovative Clinical & Consulting Servs., LLC v. First Nat'l Bank of Ames, Iowa*, 279 Ga. 672 (2005)).

To satisfy the Georgia long-arm statute, the plaintiff must show that personal jurisdiction is permitted under one of the express statutory bases, interpreted and applied literally. *Diamond Crystal*, 593 F.3d at 1259. As applicable here, the long-arm statute provides:

> A court of this state may exercise personal jurisdiction over any nonresident . . . as to a cause of action arising from any of the acts, omissions, ownership, use, or possession enumerated in this Code section, in the same manner as if he or she were a resident of this state, if in person or through an agent, he or she:
>
> (1) Transacts any business within this state;
>
> (2) Commits a tortious act or omission within this state, except as to a cause of action for defamation of character arising from the act;
>
> (3) Commits a tortious injury in this state caused by an act or omission outside this state if the tort-feasor regularly does or solicits business, or engages in any

other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;

(4) Owns, uses, or possesses any real property situated within this state.

O.C.G.A. § 9-10-91.

Drake makes no genuine attempt to satisfy any of these subsections. Treating his factual allegations as true, none of the alleged events occurred in Georgia. For instance, Drake's painting and Adora Midtown Park are located in Texas. The judicial decisions Drake challenges were all entered in Texas. And all the Defendants are purported to be citizens of Texas. There is simply no indication that Defendants have any connection to, or contacts with, Georgia. It appears Drake has eschewed a Texas forum in favor of this District because of his opinion that "there is not one federal district court in the entire state of Texas where he could possibly obtain a fair and impartial hearing or trial on any legal matter."[20] That belief does not alter the Georgia long-arm statute's "require[ment] that an out-of-state defendant [ ] do certain acts within the State of Georgia before [it] can be subjected to personal jurisdiction." *ATCO Sign & Lighting Co., LLC v. Stamm Mfg., Inc.*, 298 Ga. App. 528, 529 (2009) (quoting *Gust v. Flint*, 257 Ga. 129, 130

---

[20]   ECF 27, at 127 ¶ 7. As discussed below, Drake has been repeatedly sanctioned by Texas courts for his vexatious litigation tactics.

(1987)). *See also Davis v. LG Chem, Ltd.*, 849 F. App'x 855 (11th Cir. 2021) (affirming dismissal for lack of personal jurisdiction under long-arm statute and stating "plaintiff must establish a connection between the defendant's contact with the state and the claims at issue").

Because Drake has failed to allege a *prima facie* case of jurisdiction under the long-arm statute, this case must be dismissed.[21] *See McCarthy v. Yamaha Motor Mfg. Corp.*, 994 F. Supp. 2d 1318, 1324 (N.D. Ga. 2014) ("By failing to address the Georgia long-arm statute, which must be satisfied if this Court is to exercise personal jurisdiction over [the defendant], the [plaintiffs] have failed to carry their burden of establishing personal jurisdiction, and [the defendant's] motion must be granted."). The Court could stop here without addressing constitutional due

---

[21] Since Drake does not satisfy this initial burden, the Court is not required to address the remainder of the burden shifting framework. *See Diulus v. Am. Express Travel Related Servs. Co., Inc.*, 823 F. App'x 843, 849 (11th Cir. 2020) ("[T]he plaintiff bears the initial burden of alleging in the complaint sufficient facts to make out a *prima facie* case of jurisdiction. If the plaintiff doesn't meet his burden, the district court doesn't go to the second and third steps of the burden-shifting process, and the motion should be granted."). Even assuming, *arguendo*, Drake alleged a *prima facie* case of jurisdiction, Defendants point to evidence directly contradicting this theory. *See* ECF 12-1 (Taylor Decl.); ECF 33-1 (Gunderson Decl.); ECF 33-2 (Brewer Decl.); ECF 50-2 (Landerman Decl.). Drake presents no contradictory evidence.

process. *Henriquez v. El Pais Q'Hubocali.com*, 500 F. App'x 824, 829 (11th Cir. 2012). Nonetheless, the Court elects to briefly do so.

"The Due Process Clause of the Fourteenth Amendment constrains a State's authority to bind a nonresident defendant to a judgment of its courts." *Walden v. Fiore*, 571 U.S. 277, 283 (2014) (citing *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980)). "Due process requires that a nonresident defendant have certain minimum contacts with the forum so that the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice." *United States ex rel. Bibby v. Mortg. Invs. Corp.*, 987 F.3d 1340, 1354 (11th Cir. 2021). The minimum contacts inquiry "focuses on the relationship among the defendant, the forum, and the litigation." *Walden*, 571 U.S. at 284 (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775 (1984)). To guide the due process inquiry, the Eleventh Circuit has formulated a three-part test:

> (1) whether the plaintiff's claims arise out of or relate to at least one of the defendant's contacts with the forum; (2) whether the nonresident defendant purposefully availed himself of the privilege of conducting activities within the forum state, thus invoking the benefit of the forum state's laws; and (3) whether the exercise of personal jurisdiction comports with traditional notions of fair play and substantial justice.

*Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1355 (11th Cir. 2013) (collecting cases) (quotation marks omitted).

Drake fails to allege a *prima facie* case under any of these elements. As stated, the Court can ascertain no connection between any Defendant and Georgia. It would be fundamentally unfair—and violate all notions of due process—for any Defendant to be forced to litigate Drake's claims in this forum. At best, Drake contends (in conclusory fashion) that he is a citizen of Georgia and has resided in the state for five years.[22] As discussed below, the Court is dubious of this statement given Drake's repeated habit of signing pleadings in other courts claiming to be domiciled in numerous different states by using P.O. Box addresses. But even assuming Drake is a Georgia citizen, the result does not change. *See Walden*, 571 U.S. at 285 ("[T]he plaintiff cannot be the only link between the defendant and the forum."). *See also Allegiant Physicians Servs., Inc. v. Sturdy Mem'l Hosp.*, 926 F. Supp. 1106, 1115 (N.D. Ga. 1996) ("In contrast to instances where a non-resident defendant contacts a Georgia plaintiff, personal jurisdiction has been found lacking where the Georgia plaintiff contacts the out-of-state defendant."). Thus, personal jurisdiction is likewise not proper under constitutional due process.

Finally, notwithstanding the dearth of connections between Defendants and Georgia, Drake asserts the Court may properly assert personal jurisdiction under

---

[22]   ECF 27, at 125 ¶ 2.

an *in rem* theory. Stated generally, "[i]f jurisdiction is based on the court's power over property within its territory, the action is called '*in rem*' or '*quasi in rem*.'" *Shaffer v. Heitner*, 433 U.S. 186, 199 (1977). The underlying rationale is that, "when claims to the property itself are the source of the underlying controversy between the plaintiff and the defendant, it would be unusual for the State where the property is located not to have jurisdiction." *Id*. at 207. *See also Hanson v. Denckla*, 357 U.S. 235, 246 (1958) ("The basis of [*in rem*] jurisdiciton is the presence of the subject property within the territorial jurisdiction of the forum State.").

Given Drake's sweeping claims alleging an abundance of constitutional violations against scores of individuals and entities, the Court is not convinced this action so narrowly arises out of ownership of Drake's painting as to invoke *in rem* jurisdiction. Even assuming it did, the Court cannot exercise such jurisdiction here. A threshold requirement for *in rem* jurisdiction is that the *res* actually be located within the forum state. *See United States v. One Lear Jet Aircraft, Serial No. 35A-280, Registration No. YN-BVO*, 836 F.2d 1571, 1573 (11th Cir. 1988) ("The general rule of *in rem* jurisdiction is that the court's power derives entirely from its control over the defendant res."); *L.B. Harvey Marine, Inc. v. M/V River Arc*, 712 F.2d 458, 459 (11th Cir. 1983) ("The essential function of an action in rem is the determination of title to or the status of property located — physically or legally — within the court's

jurisdiction."); 4A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1070 (4th ed. 2021) ("The presence of the res within a court's territorial jurisdiction is necessary before the court can proceed to adjudication."). It is undisputed that the at-issue painting is located in *Texas*, not Georgia. Thus, any reliance on *in rem* jurisdiction fails at the starting gate.

In sum, there is no authority for this Court to exercise any form of personal jurisdiction over Defendants in this case. Therefore, Drake's proposed Second Amendment Complaint is futile and this action must be dismissed.[23]

### 4.    The Remaining Defendants

Drake has sued 36 separate parties. He has only sought and obtained summonses for eight: Tillery, Tobolowsky, Adora 9 Operations, Russell & Wright PLLC, U.S. Freedom Capital, Allen Landerman PC, and Stonegate.[24] Although this action has been pending over nine months, there is no indication Drake has made

---

[23]  Because the Court lacks jurisdiction, Drake's motion for the Court to seize his painting from Stonegate and Adora 9 Operations [ECF 25] is **DENIED AS MOOT**.

[24]  ECF 2. Of those eight, Drake has not served Landerman or Russell & Wright. As to Russell & Wright, on November 2, 2020, Drake filed a "Motion for Substitution of Service" requesting the Court to permit him to serve Russell & Wright according to Federal Rule of Civil Procedure 4(e)(1) and Texas Rule of Civil Procedure 106(b). As previously discussed, Drake has not alleged a single fact demonstrating personal jurisdiction is proper in this Court. Thus, the motion for substitution of service [ECF 18] is **DENIED**.

an attempt to serve any of the remaining 28 Defendants. And all but one of the unserved Defendants are federal magistrate or district judges. Indeed, Drake has sued the entire bench for the Northern District of Texas. Perhaps most troubling, and as made abundantly clear in Drake's response to Landerman's motions, Drake never actually intended to serve these Defendants with process.

It is likely the Court could dismiss this action against the unserved Defendants for a multitude of reasons.[25] The narrowest and most appropriate is the reason already discussed: Drake has not alleged a *prima facie* case of personal jurisdiction. None of the unserved Defendants—with the exception of Landerman—has filed a dispositive motion or responsive pleading. Normally, a district court cannot "*sua sponte* dismiss a complaint for lack of personal jurisdiction without first giving the parties an opportunity to present their views on the issue." *Marsalis v. STM Reader, LLC*, 806 F. App'x 748, 752 (11th Cir. 2020) (quoting *Lipofsky v. N.Y. State Workers Comp. Bd.*, 861 F.2d 1257, 1258 (11th Cir. 1988)). In this case, Drake has clear notice of the jurisdictional issues plaguing his pleadings. He has been afforded considerable briefing on the issue. His positions

---

[25] For example, Drake has not served these Defendants within the time required by Rule 4(m). Also, Tillery and Tobolowsky raise the affirmative defense of absolute judicial immunity, which could also apply to the unserved federal judges.

have made clear that this dispute cannot be heard against any Defendant in this forum. And in any event, the Eleventh Circuit recognizes "an exception to our general rule against dismissal without notice if the complaint is patently frivolous or if reversal would be futile." *Tazoe v. Airbus S.A.S.*, 631 F.3d 1321, 1336 (11th Cir. 2011). For the reasons stated above, permitting amendment here would be futile. Therefore, the Court finds this action should be dismissed against all Defendants, served and unserved.

### 5.    Landerman's Motion for Sanctions

Landerman seeks sanctions against Drake for his conduct in this litigation. At the outset, Drake requests the Court to strike Landerman's motion, claiming he does not have standing to seek sanctions because Drake has not served him. Drake cites no authority for this position. To the contrary, his cases simply reaffirm that this Court lacks authority over Landerman because of the service failure. *See Pardazi v. Cullman Med. Ctr.*, 896 F.2d 1313, 1317 (11th Cir. 1990) ("Service of process is a jurisdictional requirement: a court lacks jurisdiction over the person of a defendant when that defendant has not been served.").

More to the point, a court in this District has previously stated that "[g]enerally . . . a non-party to a case does not have standing to move for sanctions." *Key v. JPMorgan Chase Bank, N.A.*, No. 1:17-cv-4341-MLB-CMS, 2018

WL 6818660, at *12 (N.D. Ga. Mar. 23, 2018) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1337.1 (3d ed.)). *See also New York News, Inc. v. Kheel*, 972 F.2d 482, 489 (2d Cir. 1992) ("The district court properly ruled that . . . non-party and non-participant lacked standing to seek Rule 11 sanctions."). However, according to other courts, "a non-party has standing to move for sanctions in situations where the non-party . . . is a pending active participant in the case, such as a named defendant that has not yet been served." *Pinpoint IT Servs., L.L.C. v. Atlas IT Exp. Corp.*, 802 F. Supp. 2d 691, 693 (E.D. Va. 2011). *See also Greenberg v. Sala*, 822 F.2d 882, 885 (9th Cir. 1987) (affirming that "defendants had standing to seek Rule 11 sanctions in the district court" even though the "defendants were named as defendants in the complaint, however, the complaint was not served on any of them except [one]"). One district court has succinctly summarized this framework as follows: "Those non-parties who are brought in or are attempted to be brought into litigation involuntarily by one process or another have standing. Other nonparties do not." *Hochen v. Bobst Grp., Inc.*, 198 F.R.D. 11, 15 (D. Mass. 2000).

The Court holds that Landerman, as a named but unserved Defendant, has standing to seek sanctions. Drake named Landerman as a party to this action and asserted various substantive allegations against him. Landerman never willingly

sought to be included in this litigation through his own volition. In fact, Landerman believes Drake's claims to be frivolous and has filed a dispositive motion. A finding that Landerman possesses standing furthers the goal of Rule 11 sanctions to "reduce frivolous claims, defenses, or motions, and to deter costly meritless maneuvers." *Massengale v. Ray*, 267 F.3d 1298, 1302 (11th Cir. 2001). Therefore, Drake's motion to strike [ECF 61] is **DENIED**.

The next question is whether sanctions are appropriate. According to Landerman, this is a vexatious lawsuit asserted as a "collateral attack on various rulings of matters filed in the state and federal district courts of Texas."[26] What is more, Landerman claims Drake filed the suit in this District—with knowledge that it lacked jurisdiction—simply to evade filing requirements imposed on him in other federal district courts. As a remedy, Landerman seeks the following:

> [D]ismissal of [Drake's] case against [Landerman] with prejudice; barring [Drake] from suing [Landerman] without first getting permission from this Court; compensation of [Landerman] for attorney's fees, expenses, and court costs incurred in drafting this Motion, its Motion to Dismiss, and all supporting briefs . . . and all other remedies that this Court deems appropriate.[27]

---

[26]   ECF 53, at 1.

[27]   ECF 53-1, at 8.

It is clear that Drake is no stranger to the state and federal judicial systems. By assuming a barrage of pseudonyms—such as Eric Von Drake, E. Drake, E.V. Drake, Eric Vondrake, Michael Eric Drake, Klager E. Drake, and (as in this case) Eric Erpel—Drake has flooded state and federal courts in numerous jurisdictions with a myriad of baseless complaints. A recent decision from the Southern District of Georgia paints a vivid picture:

> [Drake] seems to enjoy the legal process, but rather than pursuing a career in the law, he has chosen to inundate state and federal courts with filings. . . . Drake's abusive practices have drawn the ire of other federal courts, which have deemed him a vexatious litigant and imposed filing restrictions.

*Drake v. 7-Eleven Inc.*, No. CV419-208, 2020 WL 4196189, at *1–*2 (S.D. Ga. June 26, 2020), *report and recommendation adopted*, No. CV419-208, 2020 WL 4194007 (S.D. Ga. July 21, 2020) (hereafter, *7-Eleven*) (collecting cases). *See also In re Drake*, No. 4:17-MC-69-ALM-CAN, 2018 WL 912894, at *1 (E.D. Tex. Jan. 10, 2018) ("Drake has a long history of vexatious litigation in the Eastern District of Texas and other districts across the United States."), *report and recommendation adopted*, No. CV 4:17-MC-69, 2018 WL 905560 (E.D. Tex. Feb. 15, 2018).

Even more concerning, Drake has repeatedly misrepresented material facts by signing pleadings in courts across the country claiming to be domiciled in

multiple states through the use of revolving P.O. Box addresses.[28] This type of abusive conduct has led the Eastern, Northern, and Western Districts of Texas and Southern District of Georgia to prohibit Drake from proceeding *in forma pauperis* without first obtaining leave or posting a contempt bond. *7-Eleven*, 2020 WL 4196189, at *2; *Drake v. State Farm Mut. Auto. Ins. Co.*, No. SA-18-cv-854-OLG-HJB, 2018 WL 4701834, at *2 (W.D. Tex. Aug. 22, 2018), *report and recommendation adopted*, No. 5:18-cv-854-OLG, 2018 WL 4701818 (W.D. Tex. Sept. 10, 2018); *Drake v. Nordstrom Dep't Stores*, No. 3:18-cv-471-D-BN, 2018 WL 1399179, at *2–*3 (N.D. Tex. Mar. 1, 2018), *report and recommendation adopted*, No. 3:18-cv-0471-D, 2018 WL 1404320 (N.D. Tex. Mar. 19, 2018); *Drake v. Travelers Indem. Co. Consumer Cnty. Mut. Ins. Co.*, No. 2:11-cv-318, 2012 WL 13162668, at *2–*3 (E.D. Tex. Mar. 16, 2012). Many other courts have found Drake's claims to be frivolous, vexatious, and irrational. *See Drake v. Trump*, No. 19-CV-9335 (CM), 2019 WL 5551879, at *2 (S.D.N.Y. Oct. 28, 2019); *In re Drake*, No. 5:18-MC-00073, 2018 WL 10158861, at *2

---

[28] *See 7-Eleven*, 2020 WL 4196189, at *1 (collecting cases) ("In the last two years alone, [Drake] has claimed to be domiciled in Charleston, West Virginia . . . Saint Simmons, Georgia . . . Selma, Alabama . . . New York, New York . . . Grand Prairie, Texas . . . Baltimore, Maryland . . . and Savannah, Georgia.") (citations omitted). In a majority of his cases, Drake indicates that he is actually domiciled in Dallas, Texas.

(W.D. Ark. Oct. 19, 2018); *Drake v. Consumers Cnty. Mut. Ins. Co.*, No. 05-10-00857-CV, 2010 WL 3749499, at *1 (Tex. App. Sept. 28, 2010).

Notwithstanding his *pro se* status, this Court possesses the authority to sanction Drake under Federal Rule of Civil Procedure 11. *Thomas v. Evans*, 880 F.2d 1235, 1240 (11th Cir. 1989) ("Rule 11 applies to *pro se* plaintiffs."). Such sanctions are appropriate:

> (1) when a party files a pleading that has no reasonable factual basis; (2) when the party files a pleading that is based on a legal theory that has no reasonable chance of success and that cannot be advanced as a reasonable argument to change existing law; or (3) when the party files a pleading in bad faith for an improper purpose.

*Massengale v. Ray*, 267 F.3d 1298, 1301 (11th Cir. 2001) (quoting *Worldwide Primates, Inc. v. McGreal*, 87 F.3d 1252, 1254 (11th Cir. 1996)). *See also Peer v. Lewis*, 606 F.3d 1306, 1311 (11th Cir. 2010) ("In assessing the propriety of Rule 11 sanctions, this Court asks: (1) whether the party's claims are objectively frivolous, and (2) whether the person who signed the pleadings should have been aware that they were frivolous.").

The Court may also sanction Drake "under its inherent power . . . to manage its own affairs so as to achieve the orderly and expeditious disposition of cases." *Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1306 (11th Cir. 2009). To be sure, this power extends to *pro se* parties. *E.g., Meidinger v. Healthcare*

*Indus. Oligopoly*, 391 F. App'x 777, 780 (11th Cir. 2010); *Spolter v. Suntrust Bank*, 403 F. App'x 387, 390 (11th Cir. 2010). The Court's inherent authority "is both broader and narrower than other means of imposing sanctions" and "extends to a full range of litigation abuses." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991). The Court may select from a range of options between "a simple reprimand to an order dismissing the action with or without prejudice." *Mingo v. Sugar Cane Growers Co-op. of Fla.*, 864 F.2d 101, 102 (11th Cir. 1989).

"The key to unlocking a court's inherent power is a finding of bad faith." *Peer*, 606 F.3d at 1316. *See also Purchasing Power, LLC v. Bluestem Brands, Inc.*, 851 F.3d 1218, 1223 (11th Cir. 2017) ("A court may exercise this power to sanction the willful disobedience of a court order, and to sanction a party who has acted in bad faith, vexatiously, wantonly, or for oppressive reasons. . . . [T]he inherent-powers standard is a subjective bad-faith standard."). A dismissal with prejudice constitutes "an extreme sanction that may be properly imposed only when: (1) a party engages in a clear pattern of delay or willful contempt (contumacious conduct); and (2) the district court specifically finds that lesser sanctions would not suffice." *Betty K Agencies, Ltd. v. M/V MONADA*, 432 F.3d 1333, 1338 (11th Cir. 2005) (collecting cases).

Drake's conduct in this case is troubling. Unsatisfied with his success in litigating his claims in the Texas courts, Drake seeks to drag 36 separate parties with no connection to Georgia into this forum. The lion's share of his claims are collateral attacks on unfavorable court rulings, as well as a barrage of allegations against the state and federal judges who rendered them. But these claims are not novel. In fact, approximately two months before initiating this suit, Drake sued many of these same judges—by using substantially similar allegations—in the Southern District of Alabama.[29] And, as Drake ostensibly concedes, he sued many of the parties in this action with the intent to never serve them. There can be no reasonable justification for these actions except harassment and bad faith.

As discussed above, Drake's claims are improper in this Court based on a lack of personal jurisdiction. Thus, they must be dismissed in any event. But given the frivolity of Drake's claims, a dismissal with prejudice serves as an appropriate sanction for his bad faith conduct. *See Kaplan v. DaimlerChrysler, A.G.*, 331 F.3d 1251, 1255 (11th Cir. 2003) ("The purpose of Rule 11 sanctions is to reduce frivolous

---

[29] *See, e.g., E.V. Drake v. Gov't Emps. Ins. Co.*, No. 1:20-cv-00353-KD-N (S.D. Ala.) (Compl. filed July 10, 2020). That court ultimately found it lacked venue to adjudicate Drake's dispute and transferred it to the Northern District of Texas. *Drake v. Gov't Emps. Ins. Co.*, No. CV 1:20-353-KD-N, 2020 WL 6153100, at *1 (S.D. Ala. Sept. 25, 2020), *report and recommendation adopted*, No. CV 1:20-00353-KD-N, 2020 WL 6153083 (S.D. Ala. Oct. 19, 2020).

claims, defenses, or motions, and to deter costly meritless maneuvers."); *Indus. Risk Insurers v. M.A.N. Gutehoffnungshutte GmbH*, 141 F.3d 1434, 1448 (11th Cir. 1998) ("Sanctions may be imposed under Rule 11 for filings that are presented to the court for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation."). Landerman's motion is granted and Drake's claims are dismissed with prejudice.

### III.    CONCLUSION

Drake's motion for leave to file a Second Amended Complaint [ECF 54] is **DENIED**. Drake's motion for the Clerk's entry of default and a default judgment [ECF 26] is **DENIED** and U.S Freedom Capital and Adora 9 Operations's motion to set aside default and/or leave to file untimely responsive pleadings [ECF 33] is **GRANTED**. Drake's objection to the involvement of the Georgia Attorney General [ECF 24] is **DENIED**. The pending motions to dismiss docketed at ECF 9, ECF 12, ECF 35, and ECF 50 are **GRANTED**. Drake's motion for a preliminary injunction [ECF 1] and motion to strike [ECF 61] are **DENIED**. Landerman's motion for sanctions [ECF 53] is **GRANTED**. The pending motions docketed at ECF 18, ECF

25, and ECF 43 are **DENIED AS MOOT**. Drake's claims are **DISMISSED WITH PREJUDICE**. The Clerk is **DIRECTED** to close this case.

      **SO ORDERED** this the 12th day of August 2021.

Steven D. Grimberg
United States District Court Judge